**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| IN RE: | ) |
| | ) **Chapter 7** |
| JEFFREY RAY VAUGHAN, | ) |
| | ) **CASE NO. 25-37543** |
| Debtor | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) **Adv. Proc. No. _____** |
| | ) |
| EQUAL ACCESS JUSTICE FUND LP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JEFFREY RAY VAUGHAN, | ) |
| | ) |
| Defendant | ) |
| | ) |

**COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE UNDER 11 U.S.C. § 727
AND TO DISCHARGEABILITY OF DEBT UNDER 11 U.S.C. § 523**

Equal Access Justice Fund LP ("Plaintiff" or "Lender"), by and through its undersigned counsel, hereby files this Complaint against Jeffrey Ray Vaughan ("Defendant" or "Debtor"), objecting to Debtor's discharge under 11 U.S.C. § 727 and, in the alternative, objecting to the dischargeability of Plaintiff's claim under 11 U.S.C. § 523(a)(2), (a)(4), and (a)(6). In support thereof, Plaintiff states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.     Plaintiff Equal Access Justice Fund LP is a Delaware limited partnership with a principal place of business at c/o Delaware Trust Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

2.      Defendant Jeffrey Ray Vaughan is an individual debtor who resides at 10222 Grape Creek Grove Lane, Cypress, Texas 77433-4042, in Harris County, Texas.

3.      On December 11, 2025, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, initiating Case No. 25-37543.

4.      On the same date, December 11, 2025, the Debtor, as the 100% owner, President, and sole shareholder of Vaughan Law Firm, P.C. (the "Law Firm"), caused the Law Firm to file a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, initiating Case No. 25-37544.

5.      The Debtor is the 100% owner, President, and Director of the Law Firm, having served in that capacity continuously from 2003 through its cessation of operations in July 2025.

6.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J).

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

8.      In accordance with Local Rule 7008-1, Plaintiff consents to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

9.      The deadline to file objections to discharge and to object to dischargeability under 11 U.S.C. §§ 523(a)(2), (4), and (6) is March 23, 2026. This Complaint is timely filed.

**BACKGROUND FACTS**

**A.      The Loan Agreement and Guaranty**

10.     On February 24, 2021, the Lender and the Law Firm, as Borrower, entered into a Loan Agreement (the "Original Loan Agreement") pursuant to which the Lender agreed to extend

a credit facility in the principal amount of $2,000,000.00 to the Law Firm. A true and accurate copy of the Original Loan Agreement is attached hereto as **Exhibit 1**.

11.     Defendant Jeffrey Ray Vaughan executed the Original Loan Agreement both as Director of the Law Firm and, individually, as Guarantor.

12.     On August 9, 2024, the Lender and the Law Firm entered into an Amended and Restated Loan Agreement (the "Amended Loan Agreement," and together with the Original Loan Agreement, the "Loan Agreement"), increasing the credit facility to $2,400,000.00. A true and accurate copy of the Amended Loan Agreement is attached hereto as **Exhibit 2**.

13.     The Debtor executed the Amended Loan Agreement both as Director of the Law Firm and, individually, as Guarantor.

14.     Under Section 9 of the Loan Agreement, each Equity Partner of the Borrower, including the Debtor, unconditionally and irrevocably guaranteed, jointly and severally, the due and punctual payment of all present and future Obligations under the Loan Documents.

15.     The Debtor's guarantee was absolute, unconditional, and expressly stated not to be released by any act, omission, or circumstance whatsoever.

16.     The Debtor as Director of the Law Firm executed the Security Agreement dated August 9, 2024, granting the Lender a perfected security interest in all of the Law Firm's personal property, including all Law Firm Proceeds, cases, accounts, and general intangibles.  A true and accurate copy of the Security Agreement is attached hereto as **Exhibit 3**.

17.     The Debtor, as owner, Director, and Responsible Officer of the Law Firm, was the only person with authority to execute the Loan Documents, and did so in his individual capacity as Guarantor and in his corporate capacity on behalf of the Law Firm.

**B.      The Closing Collateral Certification**

18.      As a condition precedent to funding under the Amended Loan Agreement, the Lender required delivery of a Closing Collateral Certification in the form of Exhibit H to the Loan Agreement, executed by a Responsible Officer of the Borrower.

19.      On August 9, 2024, the Debtor executed the Closing Collateral Certification (the "Certification") in his capacity as Director and Responsible Officer of the Law Firm.[1]

20.      In the Certification, the Debtor certified that he had conducted "a detailed review of the transactions and conditions of Borrower during the 'Underwriting Period' and that such examination "did not disclose … the existence of any material adverse changes to the financial condition of the Borrower or the Borrower's docket of Cases during the Underwriting Period."

21.      The Certification represented that "No Equity Partner who previously had an ownership interest in the Borrower has given notice that such Equity Partner intends to transfer or has transferred a Case to a firm that is not the Borrower nor, to the knowledge of the Borrower, is any such transfer of a Case threatened."

22.      The Certification contained an attached schedule purporting to be "a correct and complete list of all active cases of borrower as of the Closing Date," including for each case the case status, amounts received to date, and low and high estimates of future attorney's fees.

23.      The Certification listed hundreds of cases with fee estimates, including mass tort matters (ITC Explosion, Paraquat, RoundUp, Hernia Mesh), train crash cases, and personal injury matters, with projected future fee amounts ranging from hundreds of thousands to millions of dollars.

---

[1] The Certification and its attached schedule of active cases are not attached as an exhibit to this Complaint because they contain confidential personal information—including the names, case descriptions, and other identifying information—of the individuals represented by the Law Firm as clients. Plaintiff will produce the Certification in the course of discovery, subject to an appropriate confidentiality or protective order entered by this Court.

24.     Based on the Certification and the case list attached thereto, the Lender relied upon the value of the collateral in making the loan and subsequent advances.

**C.     The Reliance Representation and Express Trust**

25.     Section 5.3(c) of the Amended Loan Agreement provides that "All Loan proceeds received by Borrower are subject to an express trust in favor of Lender. Borrower and each Guarantor hold all Loan proceeds as a fiduciary for the benefit of Lender and any use of any Loan proceeds that is not authorized by Lender is a defalcation by Borrower and any such Guarantor so acting on Borrower's behalf."

26.     Section 5.3(c) further provides that "Law Firm Proceeds received by Borrower are subject to an express trust in favor of Lender in the amount of Mandatory Payments due or becoming due to Lender. Borrower and each Guarantor hold such Law Firm Proceeds as a fiduciary for the benefit of Lender and any use of any Law Firm Proceeds that is not permitted under this Agreement or authorized by Lender is a defalcation by Borrower and any Guarantor or other Loan Party utilizing those trust funds."

27.     Section 5.19 of the Amended Loan Agreement contains the following "Reliance Representation": "Borrower acknowledges that the information provided to Lender by Borrower and Borrower's representations are to obtain money, or an extension, renewal, or refinancing of credit, that Lender is relying upon all of the information and representations, that Lender's reliance is reasonable, and that falsity, fraud, or misapplication of proceeds by Borrower will render Borrower's Obligations to Lender non-dischargeable in bankruptcy under 11 U.S.C. § 523(a)(2) and (4)."

**D.      Covenants Prohibiting Transfer or Referral of Cases**

28.      Section 7.1 of the Loan Agreement provides that "Neither the Borrower nor any Guarantor shall assign or reassign any of such Borrower's or Guarantor's rights to the Law Firm Proceeds in any of the Cases unless and until the Obligations have been paid in full."

29.      Section 7.7 of the Loan Agreement provides that "The Borrower shall not sell, transfer, refer, encumber or otherwise dispose of its legal interest in any Cases or enter into any agreement for the same or similar purpose without the written consent of the Lender."

30.      Section 5.14 of the Loan Agreement contained a solvency and fraudulent conveyance warranty, providing that "The Borrower is Solvent, is able to pay its debts as they become due, has sufficient capital to carry on its business and will be Solvent after giving effect to the transactions contemplated by this Agreement. The Borrower is not transferring any Collateral with any intent to hinder, delay or defraud any of its creditors or equity holders."

**E.      The Debtor's Pre-Petition Fraudulent Conduct**

31.      Upon information and belief, at some point prior to filing bankruptcy, the Debtor, acting in his capacity as the sole owner and Director of the Law Firm, referred all or substantially all of the Law Firm's cases—which constituted the core collateral securing the Loan—to other law firms without the Lender's knowledge or consent.

32.      This transfer of cases violated Section 7.1 of the Loan Agreement, which prohibited assignment of rights to Law Firm Proceeds.

33.      This transfer of cases violated Section 7.7 of the Loan Agreement, which prohibited the sale, transfer, referral, or disposition of legal interests in cases without the Lender's written consent.

34.     The Statement of Financial Affairs filed in the Law Firm's bankruptcy case discloses that on an unspecified date, the Law Firm transferred a "50% Interest in certain cases" to George Bishop, Attorney at Law, in the amount of $175,000.00.  A true and correct copy of the Schedules and Statement of Financial Affairs filed in the Law Firm's bankruptcy case is attached hereto as **Exhibit 4**.

35.     The Debtor's personal schedules and the Law Firm's schedules confirm that the Law Firm "ceased operations in July 2025."

36.     Upon information and belief, the Debtor transferred or referred the cases that were the subject of the Closing Collateral Certification—including hundreds of mass tort, train crash, and personal injury matters with estimated future fees in the millions of dollars—to third parties before filing bankruptcy, thereby destroying the value of the Lender's collateral.

37.     Upon information and belief, the Debtor made these transfers with the intent to hinder, delay, and defraud the Lender and other creditors.

F.     **The Lender's Claim Against the Debtor**

38.     The Debtor's amended schedules list a nonpriority unsecured claim to Equal Access Justice Fund LP in the amount of $2,578,455.40, described as "Litigation Funding" and noted as relating to Vaughan Law Firm, P.C.

39.     Lender filed a claim in the Law Firm's bankruptcy case as Claim No. 1, which evidences the total outstanding balance due and owing by Law Firm to Lender, as of December 11, 2025, in the principal amount of $2,493,375.27, plus accrued interest of $369,394.13, plus fees and charges of $2,293.50, plus interest that continues to accrue at the Default Rate of 27% per annum, compounded on an annual basis, plus other fees and charges, as well as attorney's fees and

expenses, that have accrued or will continue to accrue.  A true and accurate copy of the Proof of Claim is attached hereto as **Exhibit 5**.

40. Accordingly, by virtue of the Guaranty, the Debtor is jointly and severally liable to Lender, as of December 11, 2025, in the principal amount of $2,493,375.27, plus accrued interest of $369,394.13, plus fees and charges of $2,293.50, plus interest that continues to accrue at the Default Rate of 27% per annum, compounded on an annual basis, plus other fees and charges, as well as attorney's fees and expenses, that have accrued or will continue to accrue (collectively, the "Outstanding Obligations").

## COUNT I: DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(2)—FRAUDULENT TRANSFER OR CONCEALMENT

41. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

42. Section 727(a)(2) of the Bankruptcy Code provides that a debtor shall be denied a discharge if "the debtor, with intent to hinder, delay, or defraud a creditor … has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—(A) property of the debtor, within one year before the date of the filing of the petition."

43. The Debtor's interest in the Law Firm and the cases constituting its core assets were "property of the debtor" or "property of the estate" within the meaning of 11 U.S.C. § 727(a)(2).

44. The Lender held a perfected security interest in all of the Law Firm's cases and Law Firm Proceeds, which the Debtor personally guaranteed.

45. Within one year before filing bankruptcy on December 11, 2025, the Debtor transferred, referred, or permitted to be transferred substantially all of the Law Firm's cases to third parties, including but not limited to George Bishop.

8

46.     The Debtor made these transfers with the intent to hinder, delay, or defraud the Lender and other creditors, as evidenced by:

a. The transfers were made in direct violation of express covenants in the Loan Agreement prohibiting transfer or referral of cases without the Lender's consent;

b. The transfers occurred on the eve of bankruptcy after the Law Firm ceased operations in July 2025;

c. The transfers dissipated the core collateral securing more than $2.5 million in debt owed to the Lender;

d. The Debtor, as sole owner and Director of the Law Firm, had exclusive knowledge of and control over the transfers;

e. The Debtor received inadequate or no consideration for the transfers; and

f. The Debtor knew that transferring the cases would deprive the Lender of its collateral.

47.     Accordingly, the Debtor should be denied a discharge under 11 U.S.C. § 727(a)(2)(A).

**COUNT II: DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(4)—FALSE OATH**

48.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

49.     Section 727(a)(4)(A) of the Bankruptcy Code provides that a debtor shall be denied a discharge if "the debtor knowingly and fraudulently, in or in connection with the case—made a false oath or account."

50.     The Debtor executed and filed his bankruptcy petition, schedules, and statement of financial affairs under penalty of perjury.

51.     Upon information and belief, the Debtor failed to disclose, or made materially incomplete or inaccurate disclosures regarding, the transfer of the Law Firm's cases, the referral agreements or consideration received for such transfers, and the disposition of the proceeds of such transfers.

52.     The Debtor knew that such disclosures were required and material to his bankruptcy case.

53.     The Debtor made such omissions or misstatements knowingly and with intent to deceive.

54.     Accordingly, the Debtor should be denied a discharge under 11 U.S.C. § 727(a)(4)(A).

**COUNT III: DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(5)—FAILURE TO EXPLAIN LOSS OF ASSETS**

55.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

56.     Section 727(a)(5) of the Bankruptcy Code provides that a debtor shall be denied a discharge if "the debtor has failed to explain satisfactorily … any loss of assets or deficiency of assets to meet the debtor's liabilities."

57.     The Closing Collateral Certification executed by the Debtor on August 9, 2024, represented that the Law Firm had active cases with estimated future fees totaling millions of dollars, including 54 ITC Explosion cases, 70 Paraquat cases, 4 RoundUp cases, 70 Hernia Mesh cases, and numerous other personal injury and mass tort matters.

58.     The Law Firm's bankruptcy schedules disclose assets of $100,001 to $500,000 and liabilities of $1,000,001 to $10,000,000.

59.     The massive discrepancy between the projected value of the collateral as of August 9, 2024, and the value of assets disclosed in the bankruptcy schedules represents a loss of millions of dollars in assets.

60.     Upon information and belief, the Debtor has failed to satisfactorily explain what happened to the cases listed in the Closing Collateral Certification, the proceeds received from their transfer or referral, and where such proceeds went.

61.     Accordingly, the Debtor should be denied a discharge under 11 U.S.C. § 727(a)(5).

**COUNT IV: NONDISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(2)(B)—FALSE WRITTEN STATEMENT RESPECTING FINANCIAL CONDITION**

62.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

63.     Section 523(a)(2)(B) of the Bankruptcy Code excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—use of a statement in writing—(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive."

64.     The Closing Collateral Certification dated August 9, 2024, was a statement in writing.

65.     The Debtor caused the Closing Collateral Certification to be made by signing it as Director and Responsible Officer of the Law Firm.

66.     The Closing Collateral Certification was a statement respecting the financial condition of the Law Firm, an insider of the Debtor, because it detailed the Law Firm's docket of

cases, fee receivables, case statuses, and projected future fees—all of which constituted core components of the Law Firm's financial condition and ability to repay the Loan.

67.     Upon information and belief, the Closing Collateral Certification was materially false in one or more of the following respects:

a. The case list was not "correct and complete";

b. The fee estimates were materially overstated;

c. Case statuses were misrepresented;

d. Material adverse changes had occurred during the Underwriting Period that were not disclosed; and/or

e. Transfer or referral of cases was imminent, threatened, or had already occurred, contrary to the representation that no such transfer was threatened.

68.     The Lender reasonably relied on the Closing Collateral Certification, as evidenced by:

a. The Certification was a condition precedent to funding under the Loan Agreement;

b. The Loan Agreement expressly states that the Lender is relying on the Borrower's representations and that such reliance is reasonable;

c. The Lender's underwriting model for this facility was based on the value of the cases and projected fees; and

d. The Lender would not have made the loan, or would have made a materially smaller loan, absent the representations in the Certification.

69.     The Debtor made the false statements with intent to deceive, or with reckless disregard for the truth, as evidenced by:

a. The Debtor was the sole owner and Director of the Law Firm with exclusive knowledge of its cases;

b. The Debtor certified that he conducted a "detailed review" of the transactions and conditions of the Law Firm;

c. The magnitude of the discrepancy between the Certification and reality precludes good faith mistake; and

d. The Debtor subsequently transferred the cases in violation of his express covenants.

70.     As a direct and proximate result of the Debtor's false written statement, the Lender extended credit in the amount of $2,400,000.00, and the Outstanding Obligations remain outstanding.

71.     The Debtor's liability to the Lender under the Guaranty is therefore nondischargeable under 11 U.S.C. § 523(a)(2)(B).

### COUNT V: NONDISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(2)(A)—ACTUAL FRAUD

72.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

73.     Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

74.     Alternatively, and in addition to Count IV, the Debtor engaged in "actual fraud" within the meaning of Section 523(a)(2)(A) by engaging in a fraudulent scheme to obtain and

retain the Lender's money while transferring the collateral securing the loan to third parties for the purpose of hindering, delaying, or defrauding the Lender.

75.     Under *Husky International* Electronics*, Inc. v. Ritz*, 578 U.S. 356 (2016), "actual fraud" encompasses fraudulent conveyance schemes even absent an affirmative misrepresentation.

76.     The Debtor obtained credit from the Lender by representing that the Law Firm's cases would serve as collateral and that neither the Borrower nor any Guarantor would transfer or refer such cases without repaying the Obligations.

77.     While indebted to the Lender, the Debtor intentionally transferred or referred the cases to third parties without repaying the Obligations, in violation of express covenants and with the intent to defraud the Lender.

78.     The Debtor's conduct constitutes a fraudulent scheme to obtain and retain the Lender's money while dissipating the collateral.

79.     The Debtor's liability to the Lender under the Guaranty is therefore nondischargeable under 11 U.S.C. § 523(a)(2)(A).

### COUNT VI: NONDISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(4)—FRAUD OR DEFALCATION IN A FIDUCIARY CAPACITY

80.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

81.     Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

82.     The Loan Agreement expressly creates an express trust in favor of the Lender: "All Loan proceeds received by Borrower are subject to an express trust in favor of Lender. Borrower and each Guarantor hold all Loan proceeds as a fiduciary for the benefit of Lender."

14

83.     The Loan Agreement further provides that "Law Firm Proceeds received by Borrower are subject to an express trust in favor of Lender. … Borrower and each Guarantor hold such Law Firm Proceeds as a fiduciary for the benefit of Lender and any use of any Law Firm Proceeds that is not permitted under this Agreement or authorized by Lender is a defalcation by Borrower and any Guarantor or other Loan Party utilizing those trust funds."

84.     The Debtor was a fiduciary with respect to the Loan Proceeds and Law Firm Proceeds under the express terms of the Loan Agreement.

85.     By transferring or referring the Law Firm's cases to third parties without the Lender's consent and without repaying the Obligations, the Debtor diverted the Law Firm Proceeds that were subject to the express trust, thereby committing defalcation as defined by the Loan Agreement.

86.     Alternatively, the Debtor's conduct constitutes embezzlement—the fraudulent appropriation of property entrusted to him—because the Debtor was entrusted with the Law Firm Proceeds for the benefit of the Lender and misappropriated them by transferring the underlying cases.

87.     The Debtor's liability to the Lender under the Guaranty is therefore nondischargeable under 11 U.S.C. § 523(a)(4).

**COUNT VII: NONDISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(6)—WILLFUL AND MALICIOUS INJURY**

88.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

89.     Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

15

90.     The Lender held a perfected security interest in all of the Law Firm's cases and Law Firm Proceeds.

91.     The Debtor knew that the Lender held this security interest and that the cases constituted the Lender's collateral.

92.     The Debtor intentionally transferred or referred the cases to third parties, knowing that doing so would destroy the value of the Lender's collateral.

93.     The Debtor's conduct was willful because it was intentional and deliberate, not merely negligent.

94.     The Debtor's conduct was malicious because the Debtor intended to cause injury to the Lender, or at minimum acted with knowledge that injury to the Lender was substantially certain to result.

95.     As a direct and proximate result of the Debtor's willful and malicious conduct, the Lender lost the value of its collateral, resulting in injury to the Lender's property.

96.     The Debtor's liability to the Lender under the Guaranty is therefore nondischargeable under 11 U.S.C. § 523(a)(6).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Equal Access Justice Fund LP respectfully requests that this Court enter judgment in its favor and against Defendant Jeffrey Ray Vaughan as follows:

A. On Counts I, II, and III, denying the Debtor a discharge under 11 U.S.C. § 727(a);

B. On Counts IV, V, VI, and VII, alternatively and in the event the Debtor receives a discharge, declaring that Plaintiff's claim against the Debtor in the amount of the Outstanding Obligations, plus accruing interest, fees, costs, and attorneys' fees as provided in the Loan Documents, is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6);

C.  Awarding Plaintiff its costs of suit and reasonable attorneys' fees incurred in this
adversary proceeding;

D.  Awarding Plaintiff such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Jason V. Stitt*
Jason V. Stitt [Fed. No. 3962722]
Joseph E. Lehnert [Pro Hac Vice to be
Submitted]
Keating Muething & Klekamp PLL
Suite 1400
One East Fourth Street
Cincinnati, Ohio 45202
(513) 639-3964 Phone:
(513) 579-6457 Fax:
jstitt@kmklaw.com

*Attorneys for Equal Access Justice Fund LP*

15288923.v3

17